YELLOW CAB COMPANY OF LOUIS-
VILLE, INC. and Michael J.
Woods, Appellants,

v.

James W. CRUME et al., Appellees.

James W. CRUME, Cross-Appellant,

v.

Albert VOGT et al., Cross-Appellees.

Court of Appeals of Kentucky.

April 1, 1977.

Rehearing Denied July 1, 1977.

James Highfield, Ed Rectenwald, Fred E. Fisher, Louisville, for appellees.

Joseph Davis, L. Stanley Chauvin, Jr., Louis N. Garlove, Louisville, for appellants.

Before HOWARD, LESTER and PARK, JJ.

PARK, Judge.

This case arises out of a series of rear end collisions between four vehicles traveling in the same direction on a four lane street in the City of Louisville. At the close of all of the evidence, the circuit court directed a verdict on the issue of liability in favor of the plaintiff who was the driver of the third vehicle in line, against the owner and operator of a taxicab which was the fourth vehicle in line. The circuit court also directed a verdict in favor of the operators of the first two vehicles in line. The jury then returned a verdict on the issue of damages in favor of the plaintiff, Crume, against the Yellow Cab Company and its driver, Woods, for $47,624.09. The Yellow Cab Company and Woods appeal on the ground that the circuit court erred in directing a verdict against them in favor of Crume. They also claim the circuit court erred in directing a verdict in favor of the first two drivers, Miller and Bickett. In a cross-appeal, Crume also claims that it was error to direct a verdict in favor of Miller and Bickett.

The four vehicles were being operated in a southerly direction on Twenty-Second Street. In the vicinity of its intersection with Algonquin Parkway, Twenty-Second Street is a four lane street with two north bound and two south bound lanes of traffic. South of Algonquin Parkway, Twenty-Second Street intersects Dixdale Avenue. South of Dixdale Avenue, Twenty-Second Street curves to the left or east and becomes Bernheim Lane. The four lane street continues as Bernheim Lane in an easterly direction to Dixie Highway, a main north-south artery.

For traffic traveling south, Twenty-Second Street and Bernheim Lane appear as a single continuous four lane street. At the point where the four lane street curves to the east and becomes Bernheim Lane, Twenty-Second Street continues to the southwest as a two lane side street.

All four vehicles were traveling south on Twenty-Second Street—Bernheim Lane with the intention of making a right turn onto Dixie Highway at its intersection with Bernheim Lane. There were three separate collisions. The first and second vehicles (Miller and Bickett) collided; the second

and third vehicles (Bickett and Crume) collided; and the third and fourth vehicles (Crume and Woods) collided. The first impact occurred between the two lead vehicles, Miller and Bickett. However, there is a dispute among the parties as to whether the second impact was between Crume and Bickett or whether Crume was first struck by Woods and propelled into Bickett's automobile. There is also dispute with respect to the lane in which each vehicle was traveling immediately prior to the various impacts. However, it is clear that all of the vehicles were either in, or attempting to get in the curb or outside right lane of traffic in order to make a right turn at Dixie Highway.

The first question presented is whether the circuit court erred in directing a verdict in favor of Crume against the Yellow Cab Company and its driver Woods. This question involves two issues: (1) Was Woods negligent as a matter of law? (2) Was Crume free from contributory negligence as a matter of law? The second question is whether the circuit court erred in directing a verdict for Miller and Bickett on the ground that any negligence on their part was not a substantial factor in causing Crume's injuries.

Woods testified that he had been following Crume in the median or inside left lane of traffic on Twenty-Second Street. In describing his collision with Crume, Woods testified:

"A.  Well, at Dixdale there I was going to turn right on Dixie so I proceeded to turn the signal on and pull over into the right lane, and I got all the way over in the right lane except for about my left rear wheel. Mr. Crume pulled over all the way along, you know, all of a sudden like; and the next thing I heard there was a crash and Mr. Crume came to an abrupt stop and I hit him in the rear end.

\*    \*    \*    \*    \*    \*

Q.34  What did you see Mr. Crume's car do after he cut across in front of you?

A.  Come to an abrupt stop.

Q.35  Now, what did your taxicab do when Mr. Crume came to an abrupt stop?

A.  Hit—well, it just hit Mr. Crume in the rear end.

\*    \*    \*    \*    \*    \*

Q.159  Were you checking your mirror at any time when you were making this cut across from one lane in to the other?

A.  Yes, sir.

A.160  When were you checking your mirror?

A.  When I—right before I decided to change lanes.

Q.161  Alright. About how many car lengths were you behind the Crume vehicle when you started checking your mirror?

A.  About two, two and a half.

Q.162  Alright. And which mirror was it that you checked?

A.  Rear-view inside.

Q.163  When you were about two and a half car lengths behind?

A.  Yes, sir.

Q.164  Alright. Then you looked in your mirror. Then you looked ahead and the Crume vehicle was coming to a halt; is that correct?

A.  Yes, sir."

Woods further testified that his left front fender struck the rear bumper of Crume's pickup truck.

Crume testified that he was following Bickett's automobile in the right or curb lane of Twenty-Second Street. As they approached Dixdale Avenue, both Crume and Bickett pulled into the inner or left lane of traffic in order to go around an automobile which was turning right into the two lane continuation of Twenty-Second Street. At that point Crume observed that Bickett was following Miller's pickup truck which was also being operated in the median or left lane of traffic. As the street continued into Bernheim Lane, all three vehicles attempted to get into the curb or right lane of traffic.

Crume testified that, as Bickett entered the right lane of traffic, he saw Miller's pickup truck pull in front of Bickett. Crume did not see any signal given by Bickett, and he testified that Bickett's automobile blocked his view of any signal that Miller might have given. Crume further testified that Bickett brought his automobile to a stop when Miller's pickup truck cut in front of him. Crume testified:

"Q.198 At least, you said when Mr. Bickett apparently realized or saw the pickup truck coming across that Mr. Bickett began to stop and also turned his vehicle to the right as far as he could get over against the curb?

A. That's true.

Q.199 And you don't really know—or at that point you don't really know whether the pickup truck had actually contacted Mr. Bickett's car or not?

A. No. I seen he was pretty close.

Q.200 But Mr. Bickett did come to a stop, what you describe as something less than a panic stop or an abrupt stop, and at that time there was no contact between your vehicle and Mr. Bickett's vehicle at all?

A. No, sir, there wasn't.

Q.201 Then after Mr. Bickett remained stopped there for some time and you remained stopped there for some time you were struck from the rear by the cab?

A. Yes sir.

Q.202 Then that impact is what knocked you into the rear of Mr. Bickett?

A. That's true.

Q.203 And up to that time there had been no contact between you and Mr. Bickett?

A. No sir, it hadn't.

Q.204 And the entire impact between your car and Mr. Bickett's took place in the extreme right hand or curb lane of traffic?

A. He was all the way over and I was more in the right lane than I was in the left. I hadn't completely got in the right lane."

Crume estimated that he had been stopped "about three seconds" when he was struck from the rear by the Yellow Cab. Crume testified that he looked in his rear view mirror before changing lanes, but Crume stated that he never was aware of the taxicab prior to being struck. According to Crume, all of the vehicles were traveling at approximately 20 m. p. h. before slowing to change into the right or curb lane of traffic. He estimated that he was three car lengths behind Bickett as they started to change lanes, and that he brought his truck to a stop six feet behind Bickett's car.

Bickett testified that he was in the right or curb lane of traffic on Twenty-Second Street when he passed through the intersection at Algonquin Parkway. Bickett stated that he never moved into the median or left lane of the street. According to Bickett, he continued to operate his car in the curb or right lane of traffic until Miller's pickup truck suddenly cut in front of him without signal or other warning. The right rear of Miller's pickup truck made slight contact with the left front of Bickett's car. He then brought his car to a stop. He was not aware of being struck by Crume's pickup truck until he inspected the vehicles after all of them were stopped. Bickett further testified:

"Q.66 How far ahead of you was Mr. Miller?

A. It was probably I was off to his bumper—I mean back fender.

Q.67 And you came on around the curve?

A. Yes.

Q.68 And you were still about the same—

A. Yes.

Q. Were you overtaking him?

A. No.

Q.70 Were you pulling even with him?

A. I would say yes.

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;

Q.79 Did you ever blow your horn?

A. Where.

Q.80 When he began to cut over?

A. No.

\* \* \* \* \* \*

Q.92 Well, what I'm trying to distinguish, Mr. Miller didn't make a sudden hard turn, did he? Did he just ease over in that lane just like everybody said they were doing changing lanes?

A. I guess it was more or less an easing.

Q.93 He was just easing it over, and you saw him gradually beginning to ease his truck over; didn't he?

A. Why gradually, I don't know what you mean—where he was. He was probably on the line to begin with.

Q.94 All right, sir. And you knew he was coming over there, didn't you?

A. No, I didn't until he come over.

\* \* \* \* \* \*

Q.101 How many times had you traveled over that same road?

A. Probably every day, four or five years or however long its been there.

Q.102 And you were up on his right rear wheel with the front of your bumper, I guess? Is that about the way you were traveling along?

A. I would say yes.

Q.103 And your intention was to turn right onto Dixie Highway; wasn't it?

A. Right.

Q.104 And generally speaking the traffic that goes through there at that time of day does turn right onto Dixie Highway; doesn't it?

A. Yes."

Bickett was never aware of the presence of Crume or the Yellow Cab to his rear prior to bringing his car to a stop.

Miller testified that he was operating his pickup truck in the median or left hand lane of traffic. As he passed a car that was turning right into the two lane continuation of Twenty-Second Street, Miller started to change lanes so that he could make a right hand turn at Dixie Highway. Miller testified that he turned his turn signal on prior to starting into the curb or right hand lane of traffic. Miller testified:

"Q.58 Now, shortly before this accident occurred you were in the left center most lane intending to change lanes in to the right side, right lane?

A. Correct.

Q.59 And that your pickup truck was equipped I believe, with what we call west coast type mirrors?

A. That is correct.

Q.60 That is a big mirror that sits on each side of the door and hangs out about the size of a cigar box or something?

A. That is correct.

\* \* \* \* \* \*

Q.64 I assume from the fact that Mr. Bickett was over there in the right lane that you didn't see his automobile before you started to cross?

A. I did not.

Q.65 And presumably his automobile would have been in the blind spot in the mirror?

A. This is possible.

Q.66 Because you did look in the mirror?

A. Yes sir.

\* \* \* \* \* \*

Q.72 Now at some point and time after you starting changing lanes did you ever see the Bickett automobile or was there anything that called your attention to the fact that it was there?

A. When the tires started screaming I glanced in my mirror again and I seen the cars were there.

\* \* \* \* \* \*

Q.16 Put your initials there.

A. At the time I started to pull over I heard a tire screaming. I glanced into my side view mirror. This truck, it has already been testified was equipped with rear-view mirrors. I glanced over there. I seen him, Mr. Bickett's car. Very close behind it I seen what later turned out to be Mr. Crume's \* \* \* Immediately after hearing the tires scream I heard a large crash, the sound being back like

that. Looking in my mirror again I noticed there had been a collision of the cars, I pulled into the curb, stopped and went back."

Miller did not observe any collision between Crume and Bickett or Crume and the Yellow Cab. Miller concedes that the right rear of his pickup truck came into contact with the left front of Bickett's automobile.

This court concludes that a jury issue was raised with respect to the negligence of each of the drivers. According to Wood's theory of the case, he had almost completed bringing the taxi into the curb or right hand lane of traffic when Crume cut in front of him and brought his truck to an abrupt stop. The position of the vehicles after the accident lends some credence to Woods' theory. The taxicab was stopped entirely within the right lane of traffic while Crume's automobile was still partially in the median or left lane of traffic. Under KRS 189.380(1), both Woods and Crume were under a duty not to turn their vehicles from a direct course upon the highway by changing lanes until such movement could be made with reasonable safety. Both drivers had a duty to maintain a lookout ahead and to the rear in attempting to change from the left to the right lane of traffic. *Lockridge v. Mercer*, Ky., 438 S.W.2d 486 (1968); *Campbell v. Markham*, Ky., 426 S.W.2d 431 (1968); *Hainline v. Hukill*, Ky., 383 S.W.2d 353 (1964). As he had a duty to maintain a reasonable lookout to the rear, Woods was not necessarily negligent when he looked in his rear view mirror rather than maintaining a lookout ahead at all times. It was for the jury to determine whether Woods was acting as a reasonably prudent man under the traffic conditions at the time.

The jury could have believed from the evidence that Crume should have seen the collision between Miller and Bickett developing in front of him if he had been maintaining a proper lookout. The jury could also have believed that a reasonable lookout to the rear would have revealed that Woods was already turning his taxicab into the right or curb lane. Under such

circumstances, there would be a jury issue whether Crume could attempt to change lanes with reasonable safety under the circumstances. For the foregoing reasons, the court concludes that the circuit court erred in directing a verdict for Crume against the Yellow Cab Company and Woods.

Miller's argument that he was not responsible for Crume's injury is not based upon any claim that he was not negligent. Miller states that any negligence on his part was not a substantial factor in causing Crume's injuries. This argument is based upon Crume's testimony that he and Bickett were both able to bring their vehicles to a gradual stop without colliding. While this testimony may be binding on Crume, it would not be binding on the Yellow Cab Company and Woods on their cross-claims for contribution against Miller. The fact that both Crume and Bickett may have actually stopped before being struck from the rear by the Yellow Cab does not lead to the conclusion that Miller's collision with Bickett was not a substantial factor in the collision between Crume and Woods. Crume would not have brought his car to a halt but for the fact that Bickett had stopped in the street because of the collision with Miller. According to Woods, Crume brought his automobile to an abrupt stop. All three collisions occurred within a very few seconds of each other. All three of the collisions occurred in close proximity to each other. There was a jury issue whether any negligence on the part of Miller was a substantial factor in causing the collision between the Yellow Cab driven by Woods and Crume's automobile. *S. W. Corum Hauling, Inc. v. Tilford*, Ky., 511 S.W.2d 220 (1974); *Stunson v. Easley*, Ky., 469 S.W.2d 58 (1971). For the reasons set forth in *S. W. Corum Hauling, Inc. v. Tilford*, supra, the decision in *Donegan v. Denney*, Ky., 457 S.W.2d 953 (1970) is clearly distinguishable.

A closer question is presented relating to any negligence on the part of Bickett. According to Bickett, there is no evidence that he was negligent. Bickett takes the position that Miller was solely responsible for the initial collision with his automo-

bile and that, in any event, he was able to bring his automobile to a gradual stop in such a way that the following car, Crume, was able to stop without incident. This court does not agree that there was no evidence of negligence on the part of Bickett. According to his own testimony, Bickett pulled up even with the rear bumper of Miller's pickup truck. Bickett was not warranted in assuming that Miller would not attempt to change lanes. cf. *Capps v. Violett*, Ky., 488 S.W.2d 695 (1972). This is particularly true since Bickett knew that most traffic turned right at Dixie Highway. Bickett was driving in Miller's "blind spot" with his front bumper even with Miller's rear bumper. Under the circumstances, a jury might believe that Bickett did not exercise ordinary care to avoid collision with Miller. Furthermore, Crume testified that Bickett had been driving in the median or left lane of traffic, and that all three vehicles were attempting to change lanes. Miller testified that he gave a turn signal before commencing to change lanes. If Bickett was following Miller in the median or left lane, then he must have changed lanes and attempted to overtake Miller on the right. Under all of the circumstances, this court concludes that there was a jury issue with respect to Bickett's negligence. For the reasons set forth above with respect to any negligence on the part of Miller, we also conclude that there was an issue whether any negligence on the part of Bickett was a substantial factor in causing the collision between Crume and Woods' Yellow Cab.

As a directed verdict was granted in favor of Bickett and Miller, their attorneys did not have an opportunity to argue the question of damages. Consequently upon a retrial of the case, the question of damages must be submitted to the jury as well as the issue of the negligence of each of the four drivers.

The judgment of the circuit court is reversed on the appeal and on the cross-appeal.

All concur.